Peck, J.
The counsel for the plaintiffs in error ask a reversal of the judgment on several grounds, which will be noticed in their order.
1. It is insisted that the court of common pleas erred in submitting the issues of fact to a jury, before disposing of the demurrer to the petition.
The demurrer (filed September 27, 1855,) was to the entire cause of action set forth in the petition. The defendants (November 9, 1855), without' having sought or obtained any decision upon the demurrer, answered the petition, denying any and all indebtedness arising out of the facts therein stated, and on the 15th of April following, by leave, filed an additional answer presenting three other issues of fact triable by a jury, and contesting any recovery in the action • Had they filed the demurrer and answers 'at the same time, they might have been required to elect between them, and *66 could not have imposed on the plaintiff the duty and expense of meeting both. Penn. & Ohio Canal Co. v. Webb, 9 Ohio Rep. 137; Stocking v. Burnett, 10 Ohio Rep. 138. And inasmuch as the defendants could not, at one and the same time, tender issues of law and of fact to the same cause of action, it would seem to follow, that the filing of'- the answers in this case must be regarded as a waiver of the demurrer previously filed by the same parties, and such has been the uniform practice. See also Danville, Lancaster & Nicholasville Turnpike Co. v. Stewart, 2 Metc. (Ky.) Rep. 119, and Hosier et al. v. Eliason, 14 Ind. Rep. 523, where it is said, that in such cases, the demurrer must be regarded as waived, overruled or abandoned.
Beside, the defendants were not prejudiced by a failure to dispose of the demurrer. The facts stated in the petition, were sufScient, if true, to constitute a cause of action, and the omission to attach to or file with the petition a copy of the record, is not a ground of demurrer under the code. Sec. 87. It could be taken advantage of only by a motion under section 118, to make the petition more definite and certain.
2. The second and third answers of the defendants, so far as they present any defense to the action, contradict the record of forfeiture. It is insisted, however, that the evidence offered by the defendants on the trial, and rejected by the court, tended to prove these answers, and should have been permitted to go to the jury; because the forfeiture of a recognizance is an ex parte proceeding, and the record of it, is not of that conclusive character which precludes conti-adietion by parol testimony.
The record shows that Alfred Squires, on November 14, 1854, being then in custody on two indictments for horse-stealing, pending in the Brown common pleas, together with the present defendants, appeared in said court, then in session, and entered into a recognizance by which he and they, under the penalty of four hundred dollars, stipulated that he, the said Squires, should be and appear before the same court on the sixth day of the next term thereof, to answer to said indictments, and not depart the court without leave. This recognizance, entitled as of the criminal prosecution in which *67 it was taken, was severally acknowledged by them all, and thereupon, by force of the statute, became, and was a record of said court. 2 S. & C Stat. 1193, note.
The settled practice, in these cases, which may be said to be the law of such judicial undertakings, required that Squires should appear in said court on the day named in the recognizance, and answer to the criminal charge specified therein, and that the defendants, his sureties, should have him then and there for that purpose, and that if Squires was not so present or produced, the several parties to said recognizance were to be called and required to comply with its obligation; and also that, on a failure to comply, it would be the duty of the court before which it was acknowledged, to declare it forfeited, and that the forfeiture, so declared, should forthwith be deemed a record of said court.
Such being the law of this species of undertakings, how can it be said, that the calling and forfeiture of such a recognizance, is an ex parte proceeding, in the sense alluded to by the counsel for the defendants ? They voluntarily appeared in open court, and became parties to an inchoate judicial pro-needing, and were conversant, or, at least, can not plead ignorance of the legal course prescribed for its fulfillment and its forfeiture. They therefore knew, or must be presumed to have known, when entering into that engagement, that, in ■case of a default, it would be the duty of the court before whom it was acknowledged, without process or further notice, to enter against them a forfeiture of the entire penalty, which entry would have all the force and effect of a record of the court. It was ex parte, perhaps, but only so in the sense in which a judgment made by default, where a service of process has been acknowledged, could be so termed; and no one would say that a judgment, so rendered, is not final and conclusive against the defendant, until reversed or set aside in due course of law.
The record may be only evidence of the forfeiture, but it is, by the statute, evidence of a superior degree — evidence by, record — and, on general principles, can not be met and over *68 thrown by testimony of an inferior grade, as was attempted in the case at bar. State of Iowa v. Clemens, 9 Iowa, 538.
The counsel for defendants have not referred us to any case which denies the conclusiveness of such forfeiture, as between the parties, or sustains the right to' assail it by parol testimony. The case of Lyons et al. v. The State, 1 Blackf. 309, falls far short of it. In that case, which was a scire facias on a forfeited recognizance for the appearance of Lyons before the court to answer to a charge of larceny, alleging his failure to appear, and that the recognizance was declared forfeited by him and his sureties, by the court, the defendants pleaded that Lyons did appear in discharge of his recognizance, and pleaded “ not guilty ” to the indictment; that the cause was submitted to a jury, all the evidence heard, and that thereupon the court dismissed the jury and discharged Lyons from the said charge, who then and there went thence without day, etc., by the permission of the court; and that afterward, on the same day, Lyons was called and the recognizance forfeited, and that all said matters appear of record, etc. This plea' was adjudged sufficient; but here there was no attempt to contradict a record by parol testimony. The defendants sought to rebut record by record, or rather, to defend against a partial record by the production of the complete record; that is not, therefore, an authority for the position assumed. The case in 9 Iowa, 538, cited above, is, however, directly in point, and affirms the conclusiveness of the record of forfeiture, in all such cases, and the incompetency of parol testimony to assail it. To the same effect are the cases of The State v. Lighton, 4 Iowa, 280; The State v. Ghorly & Cloud, 2 Clarke (Iowa), 578; Nelson, Ch. J., in People v. Blackman, 17 Wend. 256; and Wood, J., in State v. Dailey, 14 Ohio Rep. 98, 99.
If the facts set forth in these answers are true, and there was not, in fact, any calling and forfeiture of the recognize anee, the defendants should have- applied to the court declaring the forfeiture, to vacate the entry; but while that record remains, the rules of evidence and sound public policy will not permit it to be contradicted by parol testimony.
*69 3. The defendants allege, in their fourth answer, that the-record entry of forfeiture does not relate to them, and insist that the testimony rejected by the court, if not admissible to contradict the entry, was, nevertheless, competent, as tending, in some degree, to show that said entry does not relate to the defendants and their said recognizance, and should, therefore, have been permitted to go to the jury. State v. Dailey, 14 Ohio Rep. 100.
The testimony rejected, standing by itself and unaccompanied by other facts to which no allusion is made in the bill of exceptions, and which it was not proposed by the defendants to prove, would have no tendency to establish that the forfeiture related to persons other than the defendants; while its introduction, by exciting doubts as to the truth of the-record, might seriously, but improperly, prejudice the plaintiff, and indirectly enable the defendants to contradict the-, entry. ■ The answer admits that the defendants, in' connection with Alfred Squires, did, on November 14,1854, acknowledge a recognizance before the Brown county common pleas,'in the sum of $400, conditioned for the appearance of Alfred Squires on the sixth day of April term, 1855, to answer to two indictments for horse-stealing, then pending in said court. Now in order to make the testimony ruled out, aid in' proving that the record relates to persons other than the defendants, it is necessary to assume a conjunction of facts, altogether improbable, if not impossible, to-wit: that there were present in the court of common pleas of Brown county, on the same day, three other persons of the same' name with the defendants*; that there were pending on that day four indictments for horse-stealing against a person or persons by the name of Alfred Squires ; that on the same day when the defendants acknowledged their recognizance, three other persons, of the same name, came into the same court and acknowledged a recognizance with one Alfred Squires for the same sum, and conditioned for the appearance of Alfred Squires on the same day of the next term, and for a Wee offense — a conjunction of all these facts was iiecessary, to make the testimony offered practically beneficial to the defendants, as tending to *70 show that the forfeiture did not relate to the recognizance which they had acknowledged. It is manifest from the record, that when the testimony was offered, it was not, in fact, offered for any such purpose, or that purpose would have been in some way indicated. It was doubtless offered to contradict the record, and was, for that cause, rejected by the court.
Ordinarily, courts do not interfere with the order of testimony; but.where, as in the present case, an item of proof is offered to the jury, the obvious effect of which is to prejudice the party against whom it is offered, and where the chances of its ever becoming material, as proof of any fact competent to-be established in the case, are so infinitesimal, we think the court may properly reject it, especially, if not accompanied by a statement of the purpose for which it is offered, and the' proposal to make other proof, rendering the fact it tends to establish more probable.
4. The fourth and fifth points relied on by the plaintiffs In error — that the testimony rejected, was competent, as tending to prove, that the record sued on “ was a false and supposititious record,” and as “ tending to impeach it for fraud,” and should, therefore, have been permitted to go to the jury — may be considered together.
The first objection to the admissibility of this testimony to impeach the judgment of forfeiture for fraud, arises out of the well-settled rule of law, that a judgment can not be impeached for falsehood or fraud in the judicial tribunal by which it was rendered.
It is claimed by the plaintiffs in erroF, that the testimony tended to prove that the entry of forfeiture was fraudulently made, but did not, necessarily, implicate the court.
The testimony offered, as shown by the bill of exceptions, seems to have been very cautiously worded, perhaps with reference to the case of Dailey v. The State, above cited, but it certainly does not point or refer to the prosecuting attorney, or .any other person, as instrumental in effecting the fraud, except the judge who declared the forfeiture, and he is represented, as having continued unaccountably absent from his duties for several days, and then to have returned suddenly, *71 and repaired to the clerk’s office late at night, where the deed was consummated, in the absence of the defendents, their attorneys, and all the 'other suitors of that term, and without the formality of opening a court.
The general rule is, that bills "of exception are to be construed most strongly against the party excepting. Hollister & Smith v. Reznor, 9 Ohio St. Rep. 9, and cases cited. But without resorting to this somewhat stringent rule, and giving to the bill of exceptions a reasonable construction, it’ is apparent, we think, that if the testimony offeréd tended to show any fraudulent practice in the forfeiture of the recognizance, it was solely on the part of the judge declaring it.
A still more satisfactory reason why the testimony, offered to impeach the judgment for fraud, was inadmissible, is to be found in another well-settled and salutary rule — that a party to a judgment can not impeach it in a collateral action, but must apply to the court rendering it to vacate it, or reverse it on error.
We have already seen that the plaintiffs in error were parties to the proceedings to forfeit the recognizance and constructively present at its forfeiture, as much so, at least, as a defendant, who has acknowledged service of process but fails to answer, is present when his default is confirmed.
We have been referred to the cases of Jackson v. Jackson, John. Rep. 424; Borden v. Fitch, 15 ib. 121, 146, and Burford v. Burford, 4 Munf. 241, as establishing the proposition, that an action upon a judicial record is not a collateral proceeding, and that a plea of fraud in its rendition is allowed.
The cases do not, however, establish any such proposition. The first two were cases in which the validity of decrees of divorce, etc., which had been fraudulently obtained in the state of Vermont, without any notice to the defendants therein, came before the courts in New York, and in which it was held that such a decree might be impeached for fraud, and in case of Borden v. Fitch it was held that if the defendant had been duly notified to appear, the decree would have been conclusive in New York.
The case in 4th Munford is one in which the plaintiff of *72 fered a record of recovery against him, to which the defendant was neither a party nor a privy, and the' court held that the defendant might, in such case, impeach it for fraud. In none of these cases had the .defendants therein any day in court, nor opportunity to make a defense.
Lastly, it is insisted that the verdict is insufficient to support the judgment.
The action was upon a judicial recognizance which had been forfeited by the defendants. The defendants pleaded nil dehit, mil tiel record, that the entry did not relate to them, and fraud in its procurement.
The verdict of the .jury is in these words: “We, the jury,, find for the plaintiff the amount claimed in the bond. April 16, 1856. William P. Mackline, Foreman
No exception was taken to this verdict on its rendition, nor even on the motion for new trial, though that motion was not made until several days after the rendition of the judgment, it being the practice of the courts in that-circuit to permit such motions during term, though after judgment entered. See, as to this practice, Dial v. Holier, 6 Ohio St. Rep. 228.
We think this verdict a substantial finding for the plaintiff, upon all the issues joined; and the reference therein to the amount claimed in the bond, may well be held to refer to the recognizance, in the form of which the defendants acknowledged themselves bound to the plaintiff in the sum of $400 subject to a defeasance similar to the condition of a bond. It'seems to have been so understood at the time by both parties, and the court'; and its sufficiency acquiesced in by the defendants themselves,.who did not seek for a new trial, by reason of its insufficiency, nor move in arrest of judgment. It was in truth matter of form and not of substance, and was so treated by the parties and the court, and it is now too late to reverse the judgment for such a reason.
Judgment affirmed.
Scott, C.J., and Sutlut, Gholson and Brinkerhoee, J J.,. concurred.